IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO

JULIO MORILLO LIMARDO,

Plaintiff

v.

HÉCTOR BARRETO, ADMINISTRATOR,           CIVIL 04-1343 (PG)
UNITED STATES SMALL BUSINESS
ADMINISTRATION, IN HIS OFFICIAL
CAPACITY, UNITED STATES SMALL
BUSINESS ADMINISTRATION,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  PROCEDURAL BACKGROUND

Plaintiff, Julio Morillo Limardo, (hereinafter "Morillo'), filed an administrative complaint on February 11, 1999 (hereinafter plaintiff's "EEO Complaint") alleging that the Small Business Administration (hereinafter "SBA") had discriminated against him on the basis of his race (Hispanic), national origin (Puerto Rican), sex (male) , age (48 years old), and retaliation for engaging in protected activity.  Upon review of the granting of summary judgment by the Equal Employment Opportunity Commission (hereinafter "EEOC") administrative law judge, the EEOC found on January 22, 2004 that the administrative law judge's granting of summary judgment was appropriate.  Subsequently, Morillo filed a complaint in the United States Court for the District of Puerto Rico on April 20, 2004.  (Docket No. 1.)

CIVIL 04-1343 (PG)                         2

Morillo brings this action against the defendants seeking damages for alleged violations under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000(e) et seq., (hereinafter "Title VII") and the Age Discrimination Act of 1967, 29 U.S.C. § 621 et seq., (hereinafter "ADEA"), alleging that a younger, Caucasian, female attorney was given the position of supervising attorney on a project both she and Morillo were working on. Morillo asserts that he was the subject of retaliatory discharge, in violation of the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302 and in violation of his First Amendment right to free speech when he expressed his concerns regarding a case of sexual harassment against a young female applicant in Puerto Rico by an SBA employee, and when he voiced his concerns regarding the disparate or inconsistent treatment of SBA in awarding loans to Puerto Rican applicants. Morillo also alleges that SBA breached his contract with respect to his employment and that this alleged breach violated 42 U.S.C. § 1981. Morillo also alleges that he was constructively discharged. Defendant SBA was at all relevant times allegedly aware of the facts alleged in Morillo's complaint. (Docket No. 1, at 16-20.)

This matter is before the court on a motion to dismiss, or in the alternative for summary judgment filed by defendant SBA on July 27, 2004. (Docket No. 11.) SBA moves to dismiss Morillo's complaint on the ground that Morillo has failed to establish subject matter jurisdiction with respect to his claim for employment discrimination and retaliation, and has failed to state a claim upon which relief can

CIVIL 04-1343 (PG)                           3

be granted.  In the alternative, the defendants move for summary judgment on the ground that there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law.

In opposition, Morillo submits a memorandum of law in which he contends that there were fatal legal procedural errors during the EEOC proceedings.  (Docket No. 18.)  Morillo requests that the defendants' motion for summary judgment be denied.  SBA countered Morillo's response with a reply brief on January 28, 2005. (Docket No. 21.)

Having considered the arguments of the parties, the evidence in the record and the applicable law, and for the reasons set forth below, it is my recommendation that defendants' motion to dismiss and/or for summary judgment be GRANTED.

Motion to Dismiss:  Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a case if a court lacks jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1). "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Vigueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The court must presume that federal jurisdiction is lacking until jurisdiction is otherwise established.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden is placed on the party asserting federal jurisdiction to demonstrate that such jurisdiction does in fact exist.  Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522

CIVIL 04-1343 (PG)                    4

(1st Cir. 1995)).  The complaint asserted by the plaintiff must be construed liberally, treating all well pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  Viqueira v. First Bank, 140 F.3d at 16 (citing Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987)).

Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted

        Federal Rule of Civil procedure 12(b)(6) provides for a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.    A complaint may not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would [otherwise] entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 49 (1st Cir. 1991).  The court must accept as true all well pleaded facts and indulge all reasonable inferences in the plaintiff's favor.    Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 51 (1st Cir. 1990).

        A complaint must set forth "factual allegations, either direct or inferential respecting each material element necessary to sustain recovery under some actionable legal theory."  Romero-Barceló v. Hernández- Agosto, 75 F.3d 23, 28 n.2 (1st Cir. 1996) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  The court should not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when assessing a motion to dismiss.

CIVIL 04-1343 (PG)                              5

Aulson v. Blanchard, 83 F.3d at 3;  see Abbott v. United States, 144 F.3d 1, 2 (1st Cir. 1998); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgement is appropriate when the "pleadings depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. Univ. of P.R., 864 F.2d 881, 894 (1st Cir. 1988). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the "party opposing summary judgment must 'present definite, competent evidence to rebut the motion,'" or the district court is obligated to grant the motion in favor of the moving party.  Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994) (citing Mesnick v. Gen. Elec. Co. 950 F.2d 816, 822 (1st Cir. 1991)); see Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52-53 (1st Cir. 2000).

The party confronting the motion for summary judgment must produce "specific facts, in suitable evidentiary form" to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party can not

CIVIL 04-1343 (PG)                              6

rely on "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)).

   The court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in the party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the outcome of the case. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). If a case can only be resolved by evaluating conflicting evidence, summary judgment is not appropriate.

   Puerto Rico employs an anti-ferret rule, a local rule of the district court (once Rule 311.12, now revised and renumbered as 56(c)), that requires a party seeking summary judgment "supply a list of the allegedly uncontested facts on which it relies (together with record citations) and that the opposing party include 'a separate, short, and concise statement of the material facts' (again with "specific" record references) that the opponent asserts require a trial." Alsina-Ortiz v. LaBoy, 400 F.3d 77, 80 (1st Cir. 2005). The moving party's facts "are deemed admitted unless the non-moving party files a similarly separate, short, and concise statement of material facts demonstrating that there is a genuine issue in dispute." Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (1st Cir. 1997). "The rule also does not change the non-moving party's burden of coming forward with more than a trivial,

CIVIL 04-1343 (PG)                               7

'scintilla of evidence' or creating more than a 'metaphysical doubt as to the material facts.'" Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, [251-52] (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 556 (1986)).  "This 'anti- ferret' rule aims to make the parties organize the evidence rather than leaving the burden upon the district judge."  Alsina-Ortiz v. LaBoy, 400 F.3d at 77.  Because Morillo never submitted a separate, short and concise statement of material facts which complies with the requirements of the local rule, the moving party's alleged uncontested facts are deemed true. As such, there is no genuine issue of material fact present in this case.  Indeed, of defendants' 25 uncontested facts listed in seven pages, plaintiff accepts defendants' statements number 1, 2, 3, 6, 7, 9, 10, 11, 12, 16, 17, 20, 21, 22, 23, 24 and 25, and qualifies or rejects statements 4, 5, 8, 13, 14, 15, 18, and 19 in 23 pages, with generally lengthy explanations that are difficult to follow in terms of clearly controverting a fact presented by the defendants.  Certainly, there is no short, concise counter statement raising a genuine issue. See, e.g., Cannon-Atkinson v. Cohen, 95 F. Supp. 2d 70, 73 (D.P.R. 2000).

Morillo was employed as a temporary attorney-advisor in SBA's Disaster Loan Program, where he provided legal services in connection with SBA loan-making to disaster victims.  (Docket No.12, at 1, ¶ 2.)  He began working in SBA's Disaster Loan Program on October 22, 1989, on a temporary appointment not meant to continue beyond February 10, 1990, and was employed at the GS-12 grade level. Id.

CIVIL 04-1343 (PG)                        8

In this capacity, plaintiff was employed under the "Excepted Appointment" hiring authority contained in 5 C.F.R. § 213.3102 sched. A.  (Id. at 2, ¶ 3.)  His appointment was renewed multiple times (id. at 3, ¶ 6), resulting in his non-continuous employment with SBA over a period of approximately 14 years (October 22, 1989 through June 17, 2003). (Id. at 1, ¶ 2, at 3, ¶ 7.)  As a temporary GS-12 employee appointed under 5 C.F.R. § 213.3102 sched. A, plaintiff's services could be terminated at any time if his services were no longer needed by SBA, or if SBA no longer had the necessary funds available to pay Morillo's salary. (Docket No. 12, at 1, ¶ 2, at 2, ¶ 5.)

       In September of 1998, Hurricane Georges caused major damage to Puerto Rico. (Id. at 3, ¶ 8.) As a result, Burton Warner, the Area Counsel in SBA's Disaster Office located in Niagara Falls, New York (the "Area One" Disaster Office), requested the temporary assignment of attorneys from the California Office (the "Area four" Disaster Office). (Id.)  Mr. Warner requested the temporary transfer of attorneys who were familiar with Puerto Rican law from the Area Four Office. (Id.)  These transferred attorneys were supposed to process the loans and do the respective legal work associated with the disaster caused by Hurricane Georges in the Area One Office. Id.  Morillo, who had previously been assigned to the Area Four Office, was temporarily transferred to the Area One Office to assist with the aftermath of Hurricane Georges. (Id. ¶ 9).  At that time, Morillo was 47 years old. (Id. at 5, ¶ 21.)  Morillo is a Hispanic male.  (Id. at 7, ¶ 24.)

CIVIL 04-1343 (PG)                    9

Plaintiff began work in the Area One Office on September 29, 1998. (Id. at 4, ¶ 10.) When plaintiff arrived at the Area One Office, Kathleen Eldridge was already employed in a permanent, non-temporary position at the GS-13 level, and was serving as that office's administrative attorney. (Id. at 5, ¶ 17.) At this time, Ms. Eldridge was 33 years old. (Id. at 6, ¶ 22.) Ms. Eldridge is a white female. (Id. at 7, ¶ 23.) Soon after Morillo's arrival in New York, Ms. Eldridge spoke with Mr. Warner about difficulties she was having with Morillo as related to his acceptance of her supervisory authority. (Docket No. 12, at 4, ¶ 13.) Mr. Warner called a meeting on October 8, 1998, to remind all the employees in the Area One Office of Ms. Eldridge's supervisory authority over attorneys in regards to loans granted to Puerto Rican applicants. (Id. at 4, ¶ 14.) Furthermore, he acknowledged that Pam Cohen, another Area One Office employee, would serve as backup supervisor in the event of Ms. Eldridge's absence. (Id.)

Neither Ms. Eldridge nor Ms. Cohen ever received, promotion (temporary or permanent) or permanent change of title as a result of their supervisory assignments during Hurricane Georges. (Id. at 5, ¶ 15.) During the time of his temporary assignment to the Area One Office, Morillo was employed in the same position and at the same grade level as he previously held, GS-12. (Id. ¶ 16.)

During Morillo's assignment to the Area One Office, he received a telephone call from a female applicant for a position in Puerto Rico's SBA's district office. (Id. ¶ 18.) She alleged that she had been subjected to sexual harassment during an

CIVIL 04-1343 (PG)                              10

employment interview with SBA.  (Id. at 6.)  Plaintiff told his supervisor about his conversation with the female applicant.  (Id.)  In addition, Morillo notified his supervisors in two separate memos, dated October 16, 1998 and October 19, 1998, that he thought that there was disparate treatment in the way certain loan applicants in Puerto Rico were evaluated as compared to the ways similarly situated applicants in Guam, the United States Virgin Islands, and 'mainland' United States were treated.  (Docket No. 12, at 6, ¶ 19.)

On or about October 19, 1998, Morillo's temporary placement in the Area One Office ended and he returned to California.  (Id. ¶ 20.)  Morillo filed a complaint on February 11, 1999, alleging that SBA had discriminated against him on the basis of race (Hispanic), national origin (Puerto Rican), sex (male), age (48 years old), and retaliation for engaging in what he considered protected activity.  (Id. at 7, ¶ 24.)

On August 27, 1999, Morillo was placed in a non-pay status due to lack of work.  He returned to pay status once again on September 21, 1999, and was returned once again to non-pay status due to lack of work on January 20, 2000.  His temporary appointment expired on January 19, 2001 and he received another temporary appointment on February 3, 2003.  This last appointment expired on June 17, 2003.  (Id. at 3, ¶ 7.)

Title VII Claim

Morillo's Title VII claim is based on alleged discrimination and adverse employment action on account of his gender (male), race (Hispanic) and national

CIVIL 04-1343 (PG)                    11

origin (Puerto Rican) and on account of his protected activity.  Straughn v. Delta

Airlines, Inc., 250 F.3d 23, 33 (1st Cir. 2001).

In order to prevail in a Title VII action, a plaintiff has the burden of proving

by a preponderance of the evidence a prima facie case of discrimination.  Fields v.

Clark Univ., 966 F.2d 49, 51 (1st Cir. 1992) (citing Tex. Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 253 (1981)).

Under the McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), analysis,

a plaintiff must establish a prima facie case, which in turn gives rise to an inference

of discrimination.  See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998).

The employer then must state a legitimate, nondiscriminatory reason for its

decision.  See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir.

2002).  If the employer can state such a reason, the inference of discrimination

disappears and the plaintiff is required to show that the employer's stated reason is

a pretext for discrimination.  Id. at 45.

From the record, Morillo fulfills the first two elements of a prima facie case

of discrimination based on gender, race and national origin: he is male, of Hispanic

origin and of Puerto Rican descent, all protected classes.  Furthermore, his job

performance was sufficient to meet the employer's legitimate expectation.  His

continued employment with SBA over an extended period and his transfer to the

Area One Office after the Hurricane Georges disaster show SBA's legitimate

expectation and appreciation of Morillo's professional capabilities.  However, Morillo

CIVIL 04-1343 (PG)                    12

is unable to prove that he suffered any adverse employment action, and consequently, is unable to prove the fourth prong of the prima facie case that stipulates that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  If the harassment does not result in a tangible employment action but is sufficiently severe or pervasive, then the employer is still vicariously liable. Id. at 752.  Thus, Title VII may be "violated by either explicit or constructive alterations in the terms or conditions of employment. . . ." Id. at 752; see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  ("A hostile work environment claim is composed of a series of separate acts that collectively constitute 'one unlawful employment practice.' 42 U.S.C. § 2000e-5(e)(1).")

Morillo did not suffer a tangible employment action at the hands of his supervisor(s) nor did he face sufficiently severe or pervasive harassment from his supervisor.  His employment status did not change after the alleged incidents.  The only thing that changed was Morillo's geographical location; he was returned to his home base, the Area Four office.

CIVIL 04-1343 (PG)                    13

The First Circuit looks to the actual effect on the employee to determine whether an employment action is "materially adverse" and therefore sufficient to make out a disparate treatment case. See Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996); Cancel de Rugg v. West, 106 F. Supp. 2d 289, 297 (D.P.R. 2000) (applying Blackie to Title VII). Under Blackie, "the employer must either (1) take something of consequence from the employee, . . . , by discharging or demoting [him], reducing [his] salary, or divesting [him] of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship." Blackie v. Maine, 75 F.3d at 726 (citations omitted). Cancel de Rugg held that "although Blackie originated from a Fair Labor Standards Act suit which alleged retaliatory discrimination, its standard for finding materially adverse employment action applies to Title VII suits for national origin discrimination." Similarly the court in Cancel de Rugg found that the Blackie standard applies for finding alleged gender and retaliatory discrimination under Title VII. Cancel de Rugg v. West, 106 F. Supp. 2d at 297; cf. Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49-50 (1st Cir. 1999) (extending the Blackie standard to whistleblower provision of Federal Credit Union Act); Vargas v. Puerto Rican-Am. Ins. Co., 52 F. Supp. 2d 305, 312 (D.P.R. 1999) (extending the Blackie standard to Age Discrimination in Employment Act).

Morillo does not set forth facts sufficient to constitute a materially adverse employment action. Morillo complains that Kathleen Eldridge, already a permanent, non-temporary employee at the GS-13 level serving as the Area One Office's

CIVIL 04-1343 (PG)                         14

administrative attorney prior to Morillo's arrival, took Morillo's promised position. Since the beginning of Morillo's tenure with SBA, he had been employed as a temporary GS-12 employee, and as such, can offer no basis for why he should have had supervisory responsibilities over Ms. Eldridge, a GS-13 employee.  In addition, Ms. Eldridge never received a promotion, temporary or permanent, or any increase in pay as part of her supervisory responsibilities during Hurricane Georges.  It is clear that Morillo's professional expectations were not met.  Nevertheless, he is unable to prove that any adverse employment action was taken against him by SBA.

Morillo also complains about his return/reassignment to Area Four/California after Hurricane Georges.   However, SBA's Standard Operating Procedures (hereinafter "SOPS") are such that SBA was allowed to use Morillo's services from Area Four in Area One as a non-local temporary disaster employee when there were insufficient numbers of local candidates available and then SBA was required to return him to his home base (Area Four) as soon as the workload decreased.  After Hurricane Georges there was an insufficient amount of local candidates in the Area One office to deal with the disaster, and thus, the Area One Office requested help from Area Four.

Morillo's movement back to Area Four was not a demotion.  In fact, Morillo had no basis upon which to expect to stay in New York.  Furthermore, Morillo's pay, benefits and responsibility level did not change because of his return to Area Four.

CIVIL 04-1343 (PG)                    15

Morillo has been unable to show that he experienced an adverse employment action

based on age, race or national origin.

There is no genuine issue of material fact regarding whether or not Morillo's

gender, race or national origin was connected with an alleged adverse employment

action.  This claim must be dismissed.

Title VII pursuant to 42 U.S.C. § 2000e-3(a) speaks about retaliation.  This

subsection of the law stipulates that

> (i)t shall be an unlawful employment practice for an
> employer to discriminate against any of his employees . . .
> because he has opposed any practice made an unlawful
> employment practice by this sub-chapter, or because he has
> made a charge, testified, assisted, or participated in any
> manner in an investigation, proceeding, or hearing under
> this chapter.

42 U.S.C. § 2000e-3(a).  To prove a claim for retaliation, Morillo must establish that

"(1) [he] engaged in protected conduct; (2) [he] experienced an adverse

employment action; [and] (3) [ that] there is a causal connection between the

protected conduct and the adverse employment action."  Calero-Cerezo v. United

States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (citing Gu v. Boston Police

Dep't, 312 F.3d 6, 14 (1st Cir. 2002)).  The prima facie case of retaliation is

described in Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (citations

omitted) as a "small showing" that is "not onerous" and is "easily made."  This

"small showing" must be established for each of the three elements of the prima facie

case in order to prove a claim of retaliation.

CIVIL 04-1343 (PG)                    16

Morillo fulfills the first element of a prima facie case of retaliation based on protected activity; he reported alleged sexual harassment of a prospective SBA employee and he notified his supervisor in two separate memoranda of what he believed to be disparate treatment to Puerto Rican loan applicants. Morillo does not fulfill the second element of a prima facie case of retaliation, that of adverse employment action.

There are ways circumstantial evidence can be used to demonstrate retaliation in order to fulfill the summary judgement standard. Mesnick v. Gen. Elec. Co., 950 F.2d at 828. One way to fulfill the standard is to show temporal proximity between the protected activity and the adverse employment action. Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994). Another way is to show a "discriminatory or disparate treatment in the time period between the protected activity and the adverse employment charge. . . . " Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3rd Cir. 1997)). Once a prima facie case of retaliation is established, the McDonnell-Douglas burden shifting approach is utilized. Since Morillo is unable to show any adverse employment action, analyzing circumstantial evidence relating to Morillo's employment is unnecessary.

There is no dispute as to whether or not Morillo's reporting of a case of alleged sexual harassment of a female applicant to Morillo's supervisor and the memos he wrote regarding his concern over disparate ways the SBA treated Puerto Rican loan

CIVIL 04-1343 (PG)                    17

applicants were protected activities.  However, Morillo has not stated facts sufficient to establish an adverse personal action under 42 U.S.C. § 2000e-3(a).  Calero-Cerezo v. United States Dep't if Justice, 355 F.3d at 25; see Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003) ("plaintiff [ ] must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias[ ]").  There is no genuine issue of material fact regarding whether or not the reporting of a sexual harassment claim to a supervisor or the reporting of alleged disparate loan treatment to Puerto Rican applicants was connected with SBA's decision to discriminate against Morillo or retaliate against him professionally.  This claim must be dismissed.

ADEA Claim

    "To establish a prima facie case of age discrimination under the ADEA, a claimant must demonstrate that:  1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred 'under circumstances giving rise to an inference of discrimination.'"  Terry v. Ashcroft, 336 F.3d 128, 138 (2nd Cir. 2003) (quoting Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2nd Cir. 2001)).

    The Age Discrimination Employment Act, 29 U.S.C. § 621 et seq., was enacted: (1) "to promote employment of older persons based on their ability rather than their age; [(2)] to prohibit arbitrary age discrimination in employment; [and (3)] to help

CIVIL 04-1343 (PG)                    18

employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b); <u>Johnson v. Mayor & City Council of Balt.</u>, 472 U.S. 353, 355 (1985).  "Congress enacted the ADEA to prevent the arbitrary and socially destructive discrimination on the basis of age." <u>E.E.O.C. v. Mass.</u>, 987 F.2d 64, 71 (1st Cir. 1993); <u>see</u> <u>W. Airlines, Inc. v. Criswell</u>, 472 U.S. 400, 409 (1985); <u>Trans World Air Lines, Inc. v. Thurston</u>, 469 U.S. 111, 120 (1985).  To advance this purpose, the Act makes it unlawful for an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such individual's age.  29 U.S.C. § 623(a)(1); <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 66 (2000).  In other words, an employer will be liable if age was a motivating factor in the employer's decision to discharge said employee.  <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 141 (2000).

An ADEA plaintiff bears the burden in an age discrimination suit.  <u>Shorette v. Rite Aid of Me., Inc.</u>, 155 F.3d 8, 12 (1st Cir. 1998).  However, the court must recognize that a plaintiff will rarely be able to provide direct evidence of discriminatory animus.  <u>See</u> <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. at 141 (citing <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604 (1993)).  Consequently, the plaintiff must prove his or her case through the burden shifting framework set forth in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Udo v. Tomes</u>, 54 F.3d 9, 12 (1st Cir. 1995).  In order to establish a prima facie case of age

CIVIL 04-1343 (PG)                    19

discrimination, the plaintiff will have to prove that (1) he is over the age of forty;
(2) his job performance was sufficient to meet the employer's legitimate expectation;
(3) he or she suffered an adverse employment action; (4) the employer did not treat
members of the protected class neutrally or retained persons not within the
protected class in the same position. González v. El Día, Inc., 304 F.3d 63, 68 n.5
(1st Cir. 2002); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 68 (1st Cir. 2000); Udo v.
Tomes, 54 F.3d at 12.

     Morillo argues that he had been called upon all the way from California, to be
the "lead attorney."  He claims that they refused to promote him and deprived
Morillo of the Temporary or Acting Supervisory Attorney position in favor of a
younger, Caucasian female, his junior in the agency with less years experience.
From the record, Morillo fulfills the first two elements of a prima facie case of age
discrimination:  he is over the age of forty, and his job performance was sufficient
to meet the employer's legitimate expectation.  However, again, Morillo suffered no
adverse employment action.  Furthermore, there is not sufficient statistical
information available to establish that SBA treated members of the protected class
(those over age 40) disparately, or that SBA retained persons not within the
protected class in positions that they were not qualified for while discharging
employees that were over the age of 40.

     Morillo was transferred back to Area Four after his services were no longer
needed in Area One.  He suffered no reduction in pay, benefits or employment

CIVIL 04-1343 (PG)                                        20

category; he continued to be a GS-12 temporary employee after his transfer back to California, the same position he held prior to the Hurricane Georges disaster. Despite Morillo's expectations, the evidence on record demonstrates that Morillo has not been able to directly show that any adverse employment action suffered by him can be reasonably linked to an animus to discriminate on account of his age.

<u>Constructive Discharge Claim</u>

"To establish a 'constructive discharge [claim] ,' "a plaintiff . . . must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 124 S. Ct. 2342, 2344 (2004); see <u>Landrau-Romero v. Banco Popular de P.R.</u>, 212 F.3d 607, 613 (1st Cir. 2000) (citing <u>Simas v. First Citizens' Fed. Credit Union</u>, 170 F.3d at 46 (quoting <u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.3d 476, 480 (1st Cir.1993))) ("In such cases, the plaintiff must prove that his employer imposed "'working conditions so intolerable [ ] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities.'"").

Plaintiffs must show harassing behavior was "sufficiently severe or pervasive 'to alter the conditions of [their] employment.'" <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986) (citation omitted); see <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22, (1993) ("[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their

CIVIL 04-1343 (PG)                           21

race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.").

Morillo brings a claim of constructive discharge. There is no evidence, however, that Morillo resigned from SBA. From the record, it is evident that Morillo worked on temporary assignments on and off from 1989 through June 17, 2003. At no point did Morillo resign from his position as a GS-12 employee with the SBA. As a result, Morillo has been unable to show that he was constructively discharged from his position with SBA.

Plaintiff's Failure to Exhaust Administrative Remedies

A federal employee wishing to sue the United States for employment discrimination must exhaust available administrative remedies prior to bringing suit in federal court. See Bailey v. U.S. Postal Serv., 208 F.3d 652, 654 (8th Cir. 2000).

Pursuant to the Whistleblower Protection Act of 1989, 5 U.S.C. § 1221 (hereinafter "WPA"), any claim brought under this Act is included in the group of claims that must be appealed to the Merit Systems Protection Board (hereinafter "MSPB") before a federal court can review the claim.

> Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice described in section 2302(b)(8) and seek corrective action from the Merit Systems Protection Board.

CIVIL 04-1343 (PG)                    22

5 U.S.C. § 1221(a).  Therefore, under 5 U.S.C. §§ 1221 and 2302, an aggrieved party must exhaust all administrative remedies available before filing a civil suit.  <u>See</u> <u>Knollenberg v. Merit Sys. Protection Bd.</u>, 953 F.2d 623 (9th Cir. 1992); <u>Rivera v.</u> <u>United States</u>, 924 F.2d 948 (9th Cir. 1991).

_____Assuming a disciplinary action falls short of being an "adverse action", an employee may still be able to seek relief from the MSPB if the action constitutes a "prohibited personnel practice."  5 U.S.C. § 2302.

Assuming we consider Morillo's transfer back to the Area Four Office a prohibited personnel practice, a generous assumption, he still did not exhaust the administrative options available to him.  An employee may not "appeal directly to the MSPB, but must bring his claim to the Office of Special Counsel.  If the Special Counsel, an[ ] independent office of the MSPB, decides that there is reasonable grounds to support the allegation it will bring a 'corrective action proceeding' before the MSPB."  <u>Freedman v. Turnage</u>, 646 F. Supp. 1460, 1463 (W.D.N.Y. 1986). Because Morillo had not filed a WPA claim with the MSPB prior to bringing suit in federal court, nor had he filed a claim with the Office of Special Counsel, he has failed to administratively exhaust his WPA claim.  Pursuant to Federal Rules of Civil Procedure 12(b)(1), the court lacks subject matter jurisdiction over this claim, and consequently, Morillo's WPA claim should be dismissed.

CIVIL 04-1343 (PG)                                        23

First Amendment Claim

Morillo alleges that his First Amendment right to free speech was violated when he expressed his concerns about a sexual harassment incident by a SBA lawyer and the disparate/inconsistent SBA policies for awarding loans to Puerto Rico as compared with other similarly situated islands such as Guam, Micronesia, and parts of mainland United States.

Since Morillo was a public employee, as he was employed by a governmental organization, his rights to speak of matters of public concern are not barred by his status as a government employee.  See Connick v. Myers, 461 U.S. 138, 140 (1983) (citing Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, Ill., 391 U.S. 563, 568 (1968)); see also City of San Diego, Cal. v. Roe, 543 U.S. 77, 125 S. Ct. 521, 523-24 (2004). A balancing test, however, must be employed between the First Amendment right to comment on matters of public concern and the government's interest in encouraging efficiency.  Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568.  Pursuant to the Pickering balancing test, " the whistleblower is entitled to protection against retaliation if his speech interests, along with the public's interest in hearing the speech, outweigh the government's need to limit distractions, conserve resources, and maintain esprit in the workplace." Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002) (citing Rankin v. McPherson, 483 U.S. 378, 388 (1987);

CIVIL 04-1343 (PG)                          24

Connick v. Myers, 461 U.S. at 150; Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568).

To make the determination as to whether or not an employee has an actionable first amendment claim under 42 U.S.C. § 1983, the courts have established a three prong test. Torres-Rosado v. Rotger-Sabat, 204 F. Supp. 2d 252, 258 (D.P.R. 2002). First, the speech engaged in must involve a matter of public concern. Connick v. Myers, 461 U.S. at 147. If the speech in question does not involve a matter of public concern, no valid claim may be asserted. Connick v. Myers, 461 U.S. at 147. Second, the Pickering test is applied, and the court must determine whether or not the employee's First Amendment interest outweighs the government's interest in limiting the employee's expression. Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, Ill., 391 U.S. at 568. If the first two prongs are fulfilled, a plaintiff must then show that the adverse employment action was substantially motivated by the protected expression. O'Connor v. Steeves, 994 F.2d 905, 913 (1st Cir. 1993).

Since Morillo's "expression" did not involve matters related to public concern, he has no valid First Amendment claim. See Rankin v. McPherson, 483 U.S. at 388; Connick v. Myers, 461 U.S. at 150; Pickering v. Bd. of Educ. Township High Sch. Dist. 205, Will County, Ill., 391 U.S. at 574. The First Circuit explained in O'Connor v. Steeves, that

> Where a public employee speaks out on a topic which is
> clearly a legitimate matter of inherent concern to the

CIVIL 04-1343 (PG)                              25

> electorate, the court may eschew further inquiry into the
> employee's motives as revealed by the "form and context"
> of the expression. On the other hand, public- employee
> speech on a topic which would not necessarily qualify, on
> the basis of its content alone, as a matter of inherent public
> concern (e.g., internal working conditions, affecting only
> the speaker and co-workers), may require a more complete
> Connick analysis. . . .

O'Connor v. Steeves, 994 F.2d at 913-14 (citation omitted) (emphasis in original).

Therefore, when the content of the speech relates only to the internal affairs of the

given governmental agency, as is the case with Morillo, a more in depth contextual

analysis is required.  Torres-Rosado v. Rotger-Sabat, 204 F. Supp. 2d at 259-60.

In this case, there is no question that Morillo's speech concerning the alleged

sexual harassment of a prospective SBA employee and the comments regarding

disparate treatment of loans allotted to Puerto Rico were both matters of internal

concern and did not touch upon matters of public concern.  Furthermore, Morillo

did not satisfy any of the three prongs of the test established in Torres- Rosado v.

Rotger-Sabat, and therefore, his claim of a first amendment violation must be

dismissed.

1981 Claim

Plaintiff asserts a breach of contract claim with respect to his employment

with SBA pursuant to 42 U.S.C. § 1981.  Plaintiff does not identify the contract on

which his 1981 claims is based.  As a temporary federal employee employed at the

GS-12 level, plaintiff never signed a contract for continued employment.  Instead,

plaintiff's employment status is governed by federal regulations set forth in 5 C.F.R.

CIVIL 04-1343 (PG)                              26

§ 213.   Consequently, Morillo's avenues of relief first lie with administrative remedies and not with a claim in this court.   Pursuant to Federal Rules of Civil Procedure 12 (b)(6), Morillo's 1981 contract claim must be dismissed.

CONCLUSION

In view of the above, it is my recommendation that defendant's motion for summary judgment be GRANTED and that the complaint be dismissed in its entirety.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.   The written objections must specifically identify the portion of the recommendation or report to which objection is made and the basis for such objections.   Failure to comply with this rule precludes further appellate review.   See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 3d day of November, 2005.


                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge